## STATE v. J. W. BROWN.

*Officers—Enrolling Clerk of General Assembly—Corruption—Fraudulent Enrollment of Bill—"Assignment Act."*

On a trial of an indictment against the enrolling clerk of the General Assembly for fraudulently enrolling a bill which had never passed either branch, the testimony of all the witnesses for the defendant, and all but one of those for the State, tended to show that the defendant never saw the bill, and had no knowledge of its existence until after the close of the session. One witness for the State, who had copied the bill, testified that defendant had assisted her in verifying the copy on the last day of the session, when there was a great deal of confusion in the defendant's office, but this was denied by defendant and other witnesses. There was no evidence of bribery or of any understanding or collusion between the defendant and others in regard to the enrollment of the bill. *Held*, that it was error to refuse an instruction to the jury that there was no evidence of corruption on the part of the defendant.

INDICTMENT of J. W. Brown, enrolling clerk of the General Assembly of 1895, tried before *McIver, J.*, and a jury at January Term, 1896, of WAKE Superior Court. The defendant was indicted for having unlawfully, willfully and corruptly omitted, neglected and refused to discharge a duty of his office by fraudulently causing and permitting to be enrolled as a public law a bill ("the Assignment Act") which had never passed either branch of the General Assembly, but had been laid on the table in the House of Representatives. The material parts of the testimony appear in the opinion of Associate Justice MONTGOMERY.

There was a verdict of guilty, and from the judgment thereon defendant appealed.

*Attorney General*, for the State.

*Messrs. J. B. Batchelor* and *Edwards & Royster*, for defendant (appellant).

MONTGOMERY, J. : After the examination of the witnesses had been concluded, the defendant's counsel asked the court to instruct the jury that there was no evidence of corruption on the part of the defendant.   Upon a most careful consideration of the whole evidence, we are of the opinion that the defendant was entitled to the instruction and that his Honor should have given it.   Eight witnesses, three for the state and five for the defendant, were examined.   The testimony of two of the state's witnesses and that of all the defendant's is without the least trace of inculpating matter, either taken singly or in connection with all the evidence in the case.   In fact, upon the whole evidence, with the exception of that of the witness for the state (Miss Branson), there was not one particle, either direct or circumstantial, going to show that the defendant ever had any knowledge or information of any kind concerning the existence of the bill until long after the Legislature had adjourned.   Leaving out her testimony, there is not a scintilla of proof that the defendant ever saw the bill, either in the original or in the enrolled copy, until it was found in the old library among tabled bills by the witness Ellington, who was the State librarian, after the Legislature had adjourned.   Whatever testimony there was unfavorable to the defendant is embraced in that of Miss Branson. She testified that she got the bill to make a copy of it from the defendant or one of the clerks on the last day of the session ; that she kept it for that purpose for two or three hours, and then returned it to the defendant and read it over to him, several other persons being in the room to see if it was correctly copied; that

STATE *v.* BROWN.

there was a great rush and confusion during the last days of the session. (Mr. Walser, the Speaker of the House, had testified that on the last day of the session more than 360 bills were ratified.) The defendant denied most positively that he gave this bill or any other one to Miss Branson to copy, or that she read it over with him. Suppose it be true that she did read the bill over to him, is it the least evidence of *corruption* on the part of the defendant when the circumstances of time and place are considered? It might, assuming for the purposes of this case that it was true, be some evidence tending to show negligence in his failure to look at and carefully examine the back of the bill to see what disposition had been made of it; but we do not see any evidence of a corrupt intent to enroll or to have enrolled a fraudulent bill. This failure to examine carefully the bill might have been made by the most conscientious person in the hurry of that day's business. It appears from the testimony that the defendant, as enrolling clerk, kept a book in which was entered a list of the bills which were given out to copyists to be transcribed for enrollment. The defendant failed to have this book on the trial. This failure was undoubtedly a circumstance against him. "The conduct of a party in omitting to produce that evidence, in elucidation of the subject matter in dispute, which is within his power and which rests peculiarly within his own knowledge, frequently affords occasion for presumptions against him, since it raises a strong suspicion that such evidence, if adduced, would operate to his prejudice." Starkie on Evidence, p. 73. But suppose the strongest presumption against him should arise, that is, that the book did contain the record that this bill was given out to Miss Branson, how could that alone, or taken in connection with the reading of the bill over with Miss Branson, according

STATE *v.* BROWN.

to her testimony, and his denying the testimony to be true, prove or tend to prove corruption, in the absence of other circumstances tending in some way to show a wicked purpose, that he acted " for the sake of oppression, or fraudulent gain or any other wicked motive." It might tend, with other circumstances, to prove carelessness, negligence, but under all the circumstances of this case, not to show a corrupt and wicked purpose to derive a personal benefit therefrom or to injure the public.

There was no attempt to show bribery, gain, or any understanding between the defendant and any other person about the bill, or to connect him with any suspicious circumstances relating to it.

We are, therefore, of the opinion that his Honor was in error in refusing to give to the jury the instruction asked by the defendant that there was no evidence of corruption on his part. His charge was carefully delivered and fair to the defendant, and temperate and humane, ending with a caution which he deemed necessary, to-wit, " Much has been said about the importance of this case and the great wrong which has been done the State ; still, it is your duty to try this case as you would any other, and if you convict the defendant it must be from the testimony alone."

Error.